UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GGNSC LOUISVILLE ST. MATTHEWS,
et al.,                                                                                                             Plaintiffs,

v.                                        Civil Action No. 3:16-cv-829-DJH

ROBERT GREVIOUS, as Guardian of
Melvin Hardin,                                                                     Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

      Robert Grevious sued various GGNSC entities in Jefferson Circuit Court on behalf of his brother Melvin Hardin, who was a resident of GGNSC's Golden LivingCenter – St. Matthews.[1] Grevious alleged that GGNSC negligently caused injury to Hardin and violated his rights as a nursing-home resident under Kentucky law. (Docket No. 1-1, PageID # 23-31) Grevious also sued two Golden LivingCenter administrators, Kristi Noah and Joshua Schindler. (*Id.*, PageID # 14)

      GGNSC filed its own action in this Court pursuant to the Federal Arbitration Act, seeking to compel arbitration of Grevious's claims and stay the state-court case. (D.N. 1, PageID # 1-2) GGNSC has moved to compel arbitration (D.N. 4), and Grevious has moved to dismiss on various grounds. (D.N. 7) For the reasons explained below, the Court will deny the motion to dismiss and grant the motion to compel arbitration.

---

[1] Named as defendants in the state-court action are GGNSC Louisville St. Matthews, LLC; GGNSC Administrative Services, LLC; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; GGNSC Clinical Services, LLC; Golden Gate National Senior Care, LLC; Golden Gate Ancillary, LLC; and GPH Louisville St. Matthews, LLC. (D.N. 1-1, PageID # 13-14) The same entities are plaintiffs in this action (*see* D.N. 1, PageID # 1) and will be referred to collectively herein as GGNSC.

1

**I.**

Melvin Hardin was admitted to Golden LivingCenter – St. Matthews on January 7, 2016. As part of the admissions process, his attorney in fact (Grevious) signed an alternative dispute resolution agreement. (D.N. 1-2) The ADR Agreement requires the parties to arbitrate

> [a]ny and all disputes arising out of or in any way relating to th[e ADR] Agreement or the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where [the] Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

(D.N. 1, PageID # 5-6 (first alteration in original) (quoting ADR Agreement at 12 § III))[2] The Agreement bound Hardin and his legal representatives. (D.N. 1-2, PageID # 41 § I)

According to the state-court complaint, GGNSC caused Hardin to suffer infections and pressure sores, as well as "unnecessary loss of personal dignity, extreme pain and suffering, degradation, mental anguish, disability, and disfigurement." (D.N. 1-1, PageID # 23 ¶ 26) Grevious asserted various claims of negligence against GGNSC on Hardin's behalf. (*See id.*, PageID # 23-31) He further alleged that GGNSC violated Hardin's rights as a long-term care resident under Ky. Rev. Stat. § 216.515. (*See id.*, PageID # 31-32)

In this case, GGNSC seeks to compel arbitration of Grevious's claims pursuant to the Federal Arbitration Act. (D.N. 1) Because the FAA does not provide federal-question

---

[2] Although GGNSC purported to attach the ADR Agreement as Exhibit B to its complaint (*see* D.N. 1, PageID # 6), Exhibit B appears to be missing several pages, including the one quoted above. (*See* D.N. 1-2) As Grevious does not challenge either the accuracy of the quote or the scope of the ADR Agreement, the Court accepts GGNSC's representation of the Agreement's provisions.

jurisdiction, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21-22 n.32 (1983), GGNSC invoked the Court's diversity jurisdiction. (*See* D.N. 1, PageID # 4) Grevious argues that diversity is lacking and that dismissal is warranted on various other legal and equitable grounds. (*See* D.N. 7-2) None of his arguments are persuasive.

## II.

The Court has previously rejected, on multiple occasions, all of the arguments made by Grevious in this case. *See Brandenburg Health Facilities, LP v. Mattingly*, No. 3:15-cv-833-DJH, 2016 U.S. Dist. LEXIS 79729 (W.D. Ky. June 20, 2016); *GGNSC Louisville Mt. Holly, LLC v. Mohamed-Vall*, No. 3:16-cv-136-DJH, 2016 U.S. Dist. LEXIS 81254 (W.D. Ky. Apr. 6, 2016); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH, 2016 U.S. Dist. LEXIS 25372 (W.D. Ky. Feb. 29, 2016). In the interest of judicial economy, the Court's analysis here will be brief, referring to those prior cases as appropriate.

**A.  Subject-Matter Jurisdiction**

Grevious first asserts that the Court lacks subject-matter jurisdiction because an indispensable nondiverse party—namely, Golden LivingCenter administrator Joshua Schindler—was not joined. (D.N. 7-2, PageID # 89-102) Citing *Vaden v. Discover Bank*, 556 U.S. 49 (2009), Grevious argues that the Court must look to the underlying controversy in determining whether subject-matter jurisdiction exists. (D.N. 7-2, PageID # 93) *Vaden*, however, does not apply in diversity cases. *See Watkins*, 2016 U.S. Dist. LEXIS 25372, at *4-*5. And the nursing-home administrators are not indispensable: the Court can decide the entire controversy in their absence; their interests in the litigation are the same as GGNSC's; and there is no danger of inconsistent obligations. *See id.* at *5-*7; Fed. R. Civ. P. 19(a). The fact that Schindler may be a Kentucky citizen (as is Grevious) thus does not deprive the Court of diversity jurisdiction, and

dismissal is not warranted for either lack of subject-matter jurisdiction or failure to join an indispensable party.³ (*See* D.N. 7-2, PageID # 89-102)

**B.** ***Colorado River* Abstention**

Grevious next asks the Court to abstain from exercising jurisdiction in accordance with *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (D.N. 7-2, PageID # 102-05) Abstention under the *Colorado River* doctrine should occur "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Great Earth Cos. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (quoting *Colorado River*, 424 U.S. 813). In determining whether *Colorado River* abstention is warranted, the Court considers six factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Id.* (alteration and omissions in original) (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001)).

---

³ It is not clear that Schindler is a Kentucky citizen in any event. The only indication to that effect is in Grevious's motion to dismiss, where Grevious asserts "[u]pon information and belief" that Schindler is a citizen of Kentucky. (D.N. 7-2, PageID # 90) The basis for this assertion appears to be that "Schindler received personal service in Kentucky." (*Id.*, PageID # 94; *see id.*, PageID # 91) The state-court complaint made no allegation as to Schindler's citizenship; it merely directed that Schindler be served at the Golden LivingCenter facility in Louisville, Kentucky. (*See* D.N. 1-1, PageID # 20 ¶ 14) A party's citizenship is not determined by his place of employment or location of service; rather, "[f]or purposes of diversity jurisdiction, citizenship means domicile: the state where a party both physically resides and intends to remain." *Fritz Dairy Farm, LLC v. Chesapeake Exploration, LLC*, 567 F. App'x 396, 398 (6th Cir. 2014) (citing *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990)).

The first factor is irrelevant here because no property is at issue. The second factor likewise does not weigh in favor of abstention; this Court and the Jefferson Circuit Court are mere blocks apart. Third, there is no danger of piecemeal litigation, since the Court will compel arbitration and enjoin Grevious from pursuing his claims in state court. Fourth, although the state-court action was filed first, Grevious notes that "both proceedings are still in the pleading stage," with the state court slightly ahead. (D.N. 7-2, PageID # 104) As the state court has not yet considered the merits, neither the fourth factor nor the seventh weighs in favor of abstention. *See Great Earth*, 288 F.3d at 887 (citing *Moses H. Cone*, 460 U.S. at 21-22). With respect to the fifth factor, the governing law is the Federal Arbitration Act. *See id.* (citing *Moses H. Cone*, 460 U.S. at 24). The sixth factor is neutral; neither the state court nor this Court is more likely to adequately protect GGNSC's rights.[4] Finally, concurrent jurisdiction exists. Thus, on balance, the factors do not weigh in favor of abstention. *Cf. id.*

## C. Interstate Commerce

Arguing that GGNSC's complaint fails to state a plausible claim for relief, Grevious first asserts that the ADR Agreement is unenforceable because it does not "involv[e] commerce" as required by the FAA. 9 U.S.C. § 2. (*See* D.N. 7-2, PageID # 107-08) But as the Court explained in previous cases, this argument is meritless; the Sixth Circuit has determined that the nursing-home industry affects interstate commerce. *See Mattingly*, 2016 U.S. Dist. LEXIS 79729, at *15 (citing *Glen Manor Home for the Jewish Aged v. N.L.R.B.*, 474 F.2d 1145, 1149 (6th Cir. 1973)); *Watkins*, 2016 U.S. Dist. LEXIS 25372, at *11.

---

[4] In previous cases, the Court found this factor to weigh in favor of retaining jurisdiction, explaining that Kentucky courts were unlikely to adequately protect nursing homes' contractual right to arbitrate in light of the Kentucky Supreme Court's holding in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015). *See, e.g.*, *Watkins*, 2016 U.S. Dist. LEXIS 25372, at *9. As discussed below, however, *Whisman* was recently reversed by the United States Supreme Court. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017).

D.  *Whisman*

Grevious invokes *Whisman* to argue that he lacked authority to sign a binding arbitration agreement on Hardin's behalf. (D.N. 7-2, PageID # 108-12)  In *Whisman*, the Kentucky Supreme Court held that the power to waive the principal's right to trial by jury "must be unambiguously expressed in the text of the power-of-attorney document in order for that authority to be vested in the attorney-in-fact." 478 S.W.3d at 328.  The United States Supreme Court rejected this reasoning.[5]  *See Clark*, 137 S. Ct. at 1429.  While the Supreme Court's ruling left open the possibility that one of the POAs at issue could still be found insufficient, *see id.*, that does not save Grevious here.

The *Clark* Court addressed two of the three POAs at issue in *Whisman*.  *See* 137 S. Ct. at 1425.  One (the "Clark POA") granted the attorney in fact "the power '[t]o draw, make, and sign in my name any and all checks, promissory notes, contracts, deeds or agreements; . . . and Generally to do and perform for me and in my name all that I might do if present;' and '[t]o institute or defend suits concerning my property or rights.'"  *Whisman*, 478 S.W.3d at 326 (alterations and omissions in original) (emphasis removed) (quoting Clark POA).  The Kentucky Supreme Court concluded that the latter provision did not convey the authority to bind the principal to arbitration.  *See id.* at 326-27.  In contrast, the powers "to transact, handle, and dispose of all matters affecting [the principal] and/or [her] estate in any possible way" and "to do and perform for [her] in [her] name all that [she] might if present" were deemed broad enough to encompass entering an arbitration agreement; the court found these provisions to be inadequate only insofar as they failed to expressly authorize waiver of the right to trial by jury. *Id.* at 327 (quoting Clark POA); *see id.* at 332.

---

[5] GGNSC has moved for leave to cite *Clark* as supplemental authority. (D.N. 11)  This request, which is unopposed, will be granted.

The POA authorizing Grevious to act on Hardin's behalf is sufficient under what remains of *Whisman*. Hardin granted Grevious

> full power for me and in my stead, to make contracts . . . [;] to draw, make and sign any and all . . . contracts or agreements; . . . to institute or defend suits concerning my rights, my property, real or personal[;] *and generally to do and perform for me and in my name all that I might do if present*.

(D.N. 1-3, PageID # 47 (emphasis added))  Thus, like the Clark POA in *Whisman*, Hardin's POA contains a "universal delegation of authority" that implicitly authorized Grevious to bind Hardin to an arbitration agreement.  478 S.W.3d at 327.

**E.     Unconscionability**

Finally, Grevious contends that the ADR Agreement should not be enforced because it is procedurally and substantively unconscionable.  (D.N. 7-2, PageID # 112-13)  He complains that the Agreement "is part of a mass-produced, boiler-plate, pre-printed document, likely presented to [him] with a lengthy stack of admissions paperwork" and that there is a disparity of bargaining power between nursing homes like GGNSC and residents or their representatives.  (*Id.*, PageID # 112)  However, the fact that the admissions process entails a great deal of paperwork—similar to "buying a house or a car, visiting the doctor, or starting a job"—does not render the ADR Agreement procedurally unconscionable.  *Watkins*, 2016 U.S. Dist. LEXIS 25372, at *15.  And here, as in *Watkins*, the ADR Agreement "is plainly stated; its implications are in bold type; it does not limit recovery; it is reciprocal; and [Hardin] could have opted out of the agreement within thirty days of signing it."  *Id.* at *15-*16.  (*See* D.N. 1-2)  In short, the Court again "rejects [the] suggestion that arbitration agreements in the context of nursing home admissions are per se unconscionable."  *Id.* at *16.

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) GGNSC's Motion for Leave to Cite Additional Authority (D.N. 11) is **GRANTED**.

(2) Grevious's motion to dismiss (D.N. 7) is **DENIED**.

(3) GGNSC's motion to compel arbitration (D.N. 4) is **GRANTED**. The parties are **COMPELLED** to arbitrate pursuant to the terms of the Alternative Dispute Resolution Agreement (D.N. 1-2) the claims asserted by Grevious in Jefferson Circuit Court.

(4) Grevious is **ENJOINED** from proceeding against GGNSC in the Jefferson Circuit Court action.

(5) Counsel shall promptly inform the Jefferson Circuit Court of this Order.

(6) Pursuant to 9 U.S.C. § 3, this proceeding is **STAYED** pending conclusion of the parties' arbitration, at which time the Court will decide whether to enter judgment approving any arbitral award.

(7) The parties shall submit a joint status report every **ninety (90) days** from the date of entry of this Order until the conclusion of the arbitration. The parties shall promptly report on the resolution of the arbitration or of any settlement.

August 22, 2017

**David J. Hale, Judge**
**United States District Court**